# No. 21-55464
# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEPHEN MORELAND REDD, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

TANI GORRE CANTIL-SAKAUYE, Chief Justice of California; KIMBERLY MENNINGER, Judge of the Superior Court of California, County of Orange, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the Central District of California, No. 2:16-cv-01540, Hon. Dolly M. Gee

# ANSWERING BRIEF

Kasey J. Curtis
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
Tel: (415) 543-8700
Fax: (415) 391-8269
kcurtis@reedsmith.com

Raymond A. Cardozo
Brian A. Sutherland
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105
Tel: (415) 543-8700
Fax: (415) 391-8269
rcardozo@reedsmith.com
bsutherland@reedsmith.com

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

Page

INTRODUCTION ... 1

JURISDICTIONAL STATEMENT ... 3

ISSUES PRESENTED ... 3

STATEMENT OF THE CASE ... 4

I. Appointment Of Counsel In State Post-Conviction Proceedings ... 4

II. Redd's Convictions For Murder And Attempted Murder ... 7

III. The Allegations of Redd's Original Complaint ... 9

IV. The Allegations Of Redd's First Amended Complaint ... 10

V. The District Court's Order Dismissing Redd's First Amended Complaint with Prejudice ... 13

SUMMARY OF ARGUMENT ... 13

STANDARDS OF REVIEW ... 15

ARGUMENT ... 16

I. Redd Fails To State A Viable Due Process Claim ... 16

A. Redd Has Been Afforded All The Process He Is Due In Connection With California's Habeas Procedures ... 19

B. California Did Not Create An Independent Liberty Or Property Interest When It Elected To Appoint Counsel For Inmates Subject To A Capital Sentence ... 21

1. California Law Does Not Create A Liberty Interest In The Appointment Of Habeas Counsel ... 22

# TABLE OF CONTENTS
# (Cont.)

Page


2. California Law Does Not Create A Property Interest In How Quickly Counsel Is Appointed .... 31

II. Alternatively, This Court Should Affirm On Abstention Grounds .... 34

CONCLUSION .... 41

STATEMENT OF RELATED CASES .... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Comm. on Judicial Admin. v. Massachusetts*,
488 F.2d 1241 (1st Cir. 1973) .......... 36

*Alaska Pretrial Detainees v. Johnson*,
745 F. App'x 61 (9th Cir. 2018) .......... 16, 34

*Arnett v. Kennedy*,
416 U.S. 134 (1974) .......... 17

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972) .......... 17, 31, 32, 33

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) .......... *passim*

*Briggs v. Brown*,
3 Cal. 5th 808 (2017) .......... 16, 25

*Campbell v. Blodgett*,
997 F.2d 512 (9th Cir. 1992) .......... 26, 29

*Conn. Bd. of Pardons v. Dumschat*,
452 U.S. 458 (1981) .......... 17, 27

*Courthouse News Serv. v. Brown*,
908 F.3d 1063 (7th Cir. 2018) .......... 37

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) .......... 16, 35, 37

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*,
557 U.S. 52 (2009) .......... *passim*

*Dix v. County of Shasta*,
963 F.2d 1296 (9th Cir. 1992) .......... 22, 29

**TABLE OF AUTHORITIES**
**(Cont.)**

**Page(s)**

*E.T. v. Cantil-Sakauye*,
682 F.3d 1121 (9th Cir. 2012) ........................................ *passim*

*Fetterly v. Paskett*,
997 F.2d 1295 (9th Cir. 1993) ........................................ 26, 28

*Garza v. Idaho*,
139 S. Ct. 738 (2019) ........................................ 19, 20, 27

*Gideon v. Wainwright*,
372 U.S. 335 (1963) ........................................ 26

*Herrera v. Collins*,
506 U.S. 390 (1993) ........................................ 17

*In re Anderson*,
69 Cal. 2d 613 (1968) ........................................ 4

*In re Barnett*,
31 Cal. 4th 466 (2003) ........................................ 20

*In re Sanders*,
21 Cal. 4th 697 (1999) ........................................ 4

*James v. Rowlands*,
606 F.3d 646 (9th Cir. 2010) ........................................ 22

*Johnson v. Avery*,
393 U.S. 483 (1969) ........................................ 19

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
403 F.3d 1050 (9th Cir. 2004) ........................................ 15

*Los Angeles County Bar Association v. Eu*,
979 F.2d 697 (9th Cir. 1992) ........................................ 36, 40

**TABLE OF AUTHORITIES**
**(Cont.)**

**Page(s)**


*Martinez v. Ryan*,
566 U.S. 1 (2012) .......... 19, 20, 27

*Medina v. California*,
505 U.S. 437 (1992) .......... 23, 24

*Miles v. Wesley*,
801 F.3d 1060 (9th Cir. 2015) .......... 16, 34, 35, 39

*Nationwide Biweekly Admin., Inc. v. Owen*,
873 F.3d 716 (9th Cir. 2017) .......... 16

*Olim v. Wakinekona*,
461 U.S. 238 (1983) .......... *passim*

*Oviatt v. Pearce*,
954 F.2d 1470 (9th Cir. 1992) .......... 26, 27, 28

*Paul v. Davis*,
424 U.S. 693 (1976) .......... 32

*Pennsylvania v. Finley*,
481 U.S. 551 (1987) .......... 19, 20, 23, 27

*People v. Duvall*,
9 Cal. 4th 464 (1995) .......... 16

*People v. Redd*,
48 Cal. 4th 691 (2010) .......... 7, 8, 20

*Proctor v. Vishay Intertechnology Inc.*,
584 F.3d 1208 (9th Cir. 2009) .......... 16

*Redd v. California*,
562 U.S. 932 (2010) .......... 8

## TABLE OF AUTHORITIES
## (Cont.)

**Page(s)**

*Redd v. Chappell*,
574 U.S. 1041 (2014) ........ 8

*Rizzo v. Goode*,
423 U.S. 362 (1976) ........ 40

*Sanders v. City of Pittsburg*,
14 F.4th 968 (9th Cir. 2021) ........ 15

*Sandin v. Conner*,
515 U.S. 472 (1995) ........ 22

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) ........ 32, 33

*Walker v. Deeds*,
50 F.3d 670 (9th Cir. 1995) ........ 26, 28, 29

*Washington v. Confed. Bands & Tribes of Yakima Indian Nation*,
439 U.S. 477 (1979) ........ 16

*Younger v. Harris*,
401 U.S. 37 (1971) ........ 16

**Constitution**

U.S. Const. Amend. XIV, § 1 ........ 17

**Statutes**

28 U.S.C. § 1915A ........ 9

42 U.S.C. § 1983 ........ 1, 3, 9, 13

Cal. Gov't Code § 68665 ........ 6

Cal. Penal Code § 1473 ........ 19

## TABLE OF AUTHORITIES
## (Cont.)

**Page(s)**

Cal. Penal Code § 1509 ........ 5

Cal. Stat. ch. 485 ........ 4, 5, 25

Cal. Stat. ch. 869 ........ 4

**Rules**

Cal. R. Ct. 4.561 ........ 6, 7

Cal. R. Ct. 8.652 ........ 7

## INTRODUCTION

It is undisputed that neither the United States Supreme Court nor the California Supreme Court has recognized a constitutional obligation to provide habeas counsel to criminal defendants who seek to use state habeas procedures to collaterally attack their convictions.

Yet, Plaintiff and Appellant Stephen Moreland Redd ("Redd") is attempting to use the federal courts and 42 U.S.C. § 1983 to do something that only the State of California can do—overhaul California's system for appointing habeas counsel for indigent inmates subject to capital sentences. Redd argues that because California has elected—without any federal constitutional obligation to do so—to provide habeas counsel for indigent inmates subject to capital sentences, California has created a constitutionally-protected liberty or property interest in that state-law entitlement. As a result, Redd's argument continues, the Due Process Clause of the Fourteenth Amendment requires that California appoint habeas counsel more quickly than California law allows or requires.

To secure his desired end, Redd brought the underlying putative class action against Defendants and Appellants Chief Justice of California Tani G. Cantil-Sakauye and Orange County Superior Court Judge Kimberly Menninger (collectively, "Defendants"). Redd sought to represent a class of all death row inmates who have not yet been appointed habeas counsel against a putative class of defendants consisting of all judicial officers of the State of California involved in the

appointment process. Redd requested a declaration that California's appointment system violates the constitutional rights of his putative class and that such alleged violations render California's habeas procedures constitutionally deficient.

In a detailed order, the United States District Court for the Central District of California rejected Redd's claims on the merits. Starting from the premise that there is no recognized constitutional right to habeas counsel under settled precedent, the district court concluded that whatever procedural rights California had elected to provide to Redd in connection with its state habeas procedures were not, in and of themselves, distinct constitutionally-protected liberty or property interests. Rather, the district court concluded that because "California's appointment of counsel is designed to protect [Redd]'s right to present a habeas petition," it did not "create a 'substantive end' in itself." ER-15-16. Because Redd had no constitutionally-protected interest in his right to habeas counsel, the district court concluded that his § 1983 claims failed on the merits and dismissed his lawsuit.

As explained below, the district court got it right and this Court should affirm. Redd has not establish a constitutionally-protected interest in the state-law procedures that entitle him to receive habeas counsel. Furthermore, and equally important, principles of federalism and comity also require this Court to abstain from entertaining Redd's suit because it would require an ongoing federal audit of the hundreds of habeas cases in which Redd contends counsel has not been appointed quickly enough.

## JURISDICTIONAL STATEMENT

Defendants argued below that the district court lacked jurisdiction because Redd failed to allege facts sufficient to present a justiciable case or controversy, *see* ER 9-11, but they will not renew their jurisdictional challenge on appeal. To the extent that Redd has Article III standing, the district court had original jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. *See* ER-38-40 (Redd's first amended complaint asserting § 1983 claims). This Court has jurisdiction over Redd's timely appeal from the district court's March 31, 2021 order dismissing Redd's complaint with prejudice pursuant to 28 U.S.C. § 1291. *See* ER-3-17 (March 31, 2021 order granting motion to dismiss); ER-70-71 (April 30, 2021 notice of appeal).

## ISSUES PRESENTED

This appeal presents two issues for the Court to decide:

1. Does Redd have a constitutionally-protected liberty or property interest in how quickly California provides him with court-appointed habeas counsel to assist him in collaterally attacking his conviction and capital sentence?

2. Do principles of federalism and comity require this Court to decline to entertain this controversy on the merits and abstain from hearing Redd's claims in order to avoid an ongoing federal audit of hundreds of pending state habeas corpus cases?

For the reasons explained below, the answer to the first question is "no"; the answer to the second question is "yes."

## STATEMENT OF THE CASE

### I. Appointment Of Counsel In State Post-Conviction Proceedings

In 1968, the California Supreme Court stated that it would "appoint counsel" to represent indigent defendants who had been sentenced to a penalty of death for purposes of proceedings after the termination of their state appeals. *In re Anderson*, 69 Cal. 2d 613, 633-34 (1968); *see also In re Sanders*, 21 Cal. 4th 697, 717 (1999). The California Supreme Court later formalized its policy of appointing post-conviction habeas counsel in its internal operating procedures. *See In re Sanders*, 21 Cal. 4th at 718-19; *accord* ER-32 (relevant allegations from Redd's first amended complaint).

In 1997, the California Legislature enacted legislation that created the Habeas Corpus Resource Center within California's judicial branch and authorized it to employ 30 attorneys for the purpose of representing capital defendants in post-conviction habeas proceedings and to help facilitate the recruitment and appointment of private counsel qualified to represent capital defendants. 1997 Cal. Stat. ch. 869 § 3, pp. 6236-38; *see also* 1998 Cal. Stat. ch. 485 §§ 94-100.5, pp. 3402-05 (renumbering statutes and codifying Act at Cal. Gov't Code §§ 68660-68666). That legislation also required that the California Supreme Court offer to appoint counsel to represent capital defendants in state post-conviction habeas proceedings and enter an order appointing counsel if the defendant is indigent and accepts the offer or is incompetent to accept or reject such an offer. *See* 1998 Cal. Stat. ch. 485 § 97, pp. 3403-04.

The California Legislature has set guidelines for the attorneys whom the California Supreme Court may appoint for post-conviction habeas proceedings. First, it provided that the attorney who represented the defendant at trial or on direct appeal is ineligible to serve as post-conviction habeas counsel unless the defendant expressly requests continued representation. *See* Cal. 1998 Stat. ch. 485 § 98, p. 3404. Second, it directed the California Judicial Council and California Supreme Court to adopt binding and mandatory competency standards for appointed counsel. *See id.* § 100, p. 3404. Third, it authorized hourly compensation at a rate of at least $125 "per allowable hour, as defined by the court's Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants." *Id.* § 100.5, p. 3405.

In 2016, California voters approved Proposition 66, titled the "Death Penalty Reform and Savings Act of 2016," which added various provisions to California's Government Code and Penal Code related to the habeas counsel appointment process. Among other things, Proposition 66 added California Penal Code § 1509, which provides that a "writ of habeas corpus pursuant to this section is the exclusive procedure for collateral attack on a judgment of death." Proposition 66 § 6; Cal. Penal Code § 1509(a). Proposition 66 amended prior law to provide that the trial court shall offer habeas counsel to represent the capital defendant after a judgment of death and that the defendant must file his petition for a writ of habeas corpus within one year after the trial court enters an order appointing counsel. Proposition 66 §§ 6, 16; Cal. Penal Code § 1509(b)-(c). Proposition 66 also provided that the Judicial Council and Supreme Court, in evaluating binding and

mandatory standards for attorneys, "shall consider the qualifications needed to achieve competent representation, the need to avoid unduly restricting the available pool of attorneys so as to provide timely appointment, and the standards needed to qualify for Chapter 154 of Title 28 of the United States Code." Proposition 66 § 18; Cal. Gov't Code § 68665.

As required by Proposition 66 (Cal. Pen. Code, § 190.6(d)), the Judicial Council adopted rules effective April 2019 to implement the initiative. The rules provide that the Habeas Corpus Resource Center must maintain a list of persons subject to the penalty of death and whether habeas counsel has been appointed to represent that person. Cal. R. Ct. 4.561(c). The rules direct the Habeas Corpus Resource Center to identify the persons on the list with the 25 oldest judgments of death for whom habeas counsel has not been appointed and to notify presiding judges of the superior court in which these judgments were entered. Cal. R. Ct. 4.561(c)-(d). After the superior court receives notice and determines that the capital defendant is indigent and accepts appointment of habeas counsel, "the appropriate judge must appoint a qualified attorney or attorneys to represent the person in death penalty-related habeas corpus proceedings." Cal. R. Ct. 4.561(e)(1).

Also as required by Proposition 66 (Cal. Gov. Code, § 68665(a)), the Supreme Court and the Judicial Council adopted rule 8.652 of the California Rules of Court, effective April 2019, to set competency standards for the appointment of counsel in capital habeas corpus proceedings. To qualify as competent to serve as capital habeas corpus

counsel, an attorney must meet the criteria set out in rule 8.652 of the California Rules of Court, which requires experience with criminal and habeas matters or substantially equivalent experience, as well as training on death penalty-related habeas proceedings. Cal. R. Ct. 8.652(c), (d). The superior court may appoint a qualified attorney from a statewide panel or local panel of qualified counsel. *See* Cal. R. Ct. 4.561(e)(2). The superior court also may appoint an entity that employs qualified counsel such as the Habeas Corpus Resource Center or California Appellate Project–San Francisco as counsel, and the appointed entity must assign a lead attorney qualified under rule 8.652. *See id.*; Cal. R. Ct. 8.652(h).

## II. Redd's Convictions For Murder And Attempted Murder

Plaintiff Stephen Moreland Redd murdered Timothy McVeigh and attempted to murder James Shahbakhti and Chris Weidmann. Shahbakhti and Weidmann were unarmed private security officers who approached Redd in front of a Vons supermarket in May 1994. Redd pulled a gun and shot Shahbakhti in the back as the latter fled. Redd also fired shots at Weidmann during the same confrontation. In July 1994, Redd shot McVeigh at point-blank range while robbing a different grocery store. *People v. Redd*, 48 Cal. 4th 691, 698-703 (2010). The jury found Redd guilty of the murder and attempted murders and that he committed these crimes while engaged in the commission of robbery and burglary. *See id.* at 697. It also found that Redd previously had been convicted of five serious or violent felonies. *See id.*

In Redd's automatic direct appeal to the California Supreme Court, appellate counsel was appointed to represent Redd, and the California Supreme Court affirmed Redd's convictions and death sentence. The Court stated three times in its detailed 62-page opinion that the evidence of Redd's guilt was "overwhelming." *Id.* at 728, 732, 740. The United States Supreme Court denied Redd's petition for certiorari. *Redd v. California*, 562 U.S. 932 (2010). One day later, Redd filed a state-law placeholder petition for habeas corpus, a so-called "shell petition," filed to toll the federal statute of limitations. ER-5.

In 2013, Redd filed a petition for a writ of habeas corpus in the United States District Court for the Central District of California, which was then dismissed for failure to exhaust state-law remedies. *See* Order Denying and Dismissing Petition for Writ of Habeas Corpus, *Redd v. Chappell*, No. CV 13-7238-ABC (C.D. Cal. Oct. 10, 2013). This Court subsequently denied Redd's application for a certificate of appealability and Redd petitioned for certiorari review. The United States Supreme Court unanimously denied the petition. *Redd v. Chappell*, 574 U.S. 1041 (2014).

Writing separately, Justice Sotomayor, joined by Justice Breyer, noted that the California Supreme Court had not yet appointed counsel to represent Redd in connection with his post-conviction habeas proceedings and had declined to consider his pro se submissions while his request for appointment of habeas counsel was pending. *See id.* at 1041. Justice Sotomayor suggested that Redd could file a new habeas petition in federal court and argue that he should not be required to exhaust his claims in state proceedings. *See id.* Justice Sotomayor also

suggested that Redd "might seek to bring a 42 U.S.C. § 1983 suit contending that the State's failure to provide him with the counsel to which he is entitled violates the Due Process Clause." *Id.*

## III. The Allegations of Redd's Original Complaint

Following Justice Sotomayor's separate statement, in 2016, Redd filed a pro se complaint in the United States District Court for the Central District of California against the "California Supreme Court," thereby commencing the underlying litigation. ER-57-64. Redd's pro se complaint asked the district court to order a new criminal trial or, if that relief was not available, to order the California Supreme Court to accept his pro se motion to recall the remittitur in his criminal case or, alternatively, to "supply [Redd] with counsel without further delay." ER-64.

Redd's pro se filing was controlled by the provisions of the Prisoner Litigation Reform Act and therefore subject to an initial review for frivolity. *See* 28 U.S.C. § 1915A. In its October 3, 2017 order evaluating the sufficiency of Redd's filing, the district court concluded that principles of federalism required it to abstain from deciding Redd's claims. ER-47-56. Abstention was particularly warranted, the district court concluded, because "[Redd]'s claim is that his federal due process rights are being violated by the California Supreme Court's interpretation of California law." ER-54. The district court thus dismissed the complaint and entered judgment against Redd. ER-46.

After Redd appealed to this Court and this Court appointed pro bono counsel to assist him with his appeal, this Court granted Redd's

unopposed motion to summarily vacate the district court's judgment and remand the case to the district court to allow Redd the opportunity to amend his complaint. ER-45. That order remanding the case to the district court was entered on December 20, 2018, and directed that the "mandate shall issue forthwith." *Id.*

## IV. The Allegations Of Redd's First Amended Complaint

Following remand, Redd again secured pro bono counsel to represent him and they filed a first amended complaint on behalf of Redd and approximately 360 other inmates who have been sentenced to death but have not received state habeas corpus counsel. ER-25-42. As relevant to Redd, the first amended complaint alleges that Redd was entitled to appointment of counsel under California Government Code § 68662 upon being sentenced to death and that he has been deprived of that state-law right. ER-27.

The caption of the first amended complaint names as defendants Tani G. Cantil-Sakauye, Chief Justice of California, and Kimberly Menninger, Judge of the Superior Court of California, County of Orange, as well as all other judicial officials who are "similarly situated." ER-25. It does so because Redd seeks to certify a class of defendants consisting of present and former justices of the California Supreme Court and all judges of the Superior Court who have responsibility for appointing habeas corpus counsel under state law. ER-28-29. The justices and judges are all sued in their official capacities, *i.e.*, as representatives of the State of California. *Id.*

Redd alleges in conclusory fashion that "Defendants"—the two named defendants and the putative class of defendants—"refused to appoint the state habeas corpus counsel to which all [plaintiff] class members are statutorily entitled . . . ." ER-28. But the first amended complaint's more detailed allegations describe a "systemic failure" arising from unavailability of qualified counsel and lack of funding, not a willful refusal to appoint counsel on the part of any individual judicial official. ER-33-34. The complaint alleges "there is a serious shortage of qualified private counsel willing to accept an appointment as habeas corpus counsel in a death penalty case." ER-33. The root cause of "this severe shortage" allegedly is "California's failure to provide sufficient compensation and litigation expenses to attract private counsel to accept such appointments." ER-33-34. California voters allegedly did not remedy this problem when they enacted Proposition 66. To the contrary, the complaint alleges "Proposition 66 provides no funding for such services in the Superior Courts." *Id.*

Meanwhile, the California Legislature has limited the capacity of the Habeas Corpus Resource Center to address the severe shortage of qualified habeas counsel. The California Legislature imposed "statutory restrictions on the number of attorneys [the Center] [i]s permitted to employ." ER-34-35. Under the current statute, the Habeas Corpus Resource Center has authority to hire only 34 attorneys. *Id.* Given that an insufficient number of qualified private counsel were able and willing to accept appointments, in 2008, the California Commission on the Fair Administration of Justice recommended a five-fold increase in funding over the Habeas Corpus Resource Center's

then-annual budget of $14.9 million. *Id.*; *see also* SER-151-52 (California Commission on the Fair Administration of Justice's Final Report recommending funding increase to help make habeas appointments more quickly).

The complaint alleges that the "lengthy delay in the appointment of counsel" is "a result of underfunding of the capital indigent defense program." ER-35. Proposition 66 allegedly "failed to ameliorate the systemic failure to appoint post-conviction counsel . . . ." ER-35-36. Moreover, the current Rules of Court "contain no provisions for compensating counsel for the work performed on behalf of death-row inmates or for and reimbursing litigation expenses" in connection with death-penalty habeas matters. *Id.* Redd alleges that "[w]ithout any provision for compensation and litigation expenses, the Superior Courts will not be able to attract qualified counsel to accept such appointments." *Id.*

Redd's first amended complaint asserts two causes of action based on delay in obtaining an order appointing habeas counsel to represent him. First, it alleges that Redd and other prisoners "are being deprived of a liberty and property interest in the timely appointment of counsel" in violation of their procedural due process rights. ER-38-39. Second, it alleges that the supposed failure to appoint state habeas counsel in a timely manner "has resulted in a loss of witnesses and evidence" and has deprived him and other prisoners of "meaningful access to the courts." ER-40. Redd's "access" claim is not at issue in this appeal.

### V. The District Court's Order Dismissing Redd's First Amended Complaint with Prejudice

Defendants moved to dismiss the first amended complaint on the grounds that (i) the district court lacked Article III jurisdiction, (ii) the district court should abstain from adjudicating Redd's claims on federalism grounds, and (iii) the complaint failed to state a claim upon which relief could be granted. ER-19. The district court accepted the third argument, and dismissed the complaint with prejudice. ER-9-17. It agreed with Defendants that Redd lacked a constitutionally-protected interest in his state-law claim to court-appointed habeas counsel. ER-13-16. In particular, recognizing that the United States Supreme Court had declined to recognize a constitutional right to habeas counsel, the district court explained that whatever procedural rights California may have afforded Redd as a matter of state law do not create a distinct constitutionally-protected interest. *Id.*

## SUMMARY OF ARGUMENT

For two separate and independent reasons, this Court should affirm the district court's order dismissing, with prejudice, Redd's federal constitutional claims brought under 42 U.S.C. § 1983.

First, as the district court correctly found, Redd's federal due process claim fails on the merits. Redd may have a constitutionally-protected liberty interest in his state-law right to use California's habeas procedures to collaterally attack his conviction. But California has afforded Redd all the process he is due under the federal constitution in connection with that liberty interest. California has

done so by providing Redd with the option of either waiting to have habeas counsel appointed for him or proceeding pro se. For that reason, Redd's lawsuit boils down to the question of whether, by electing to offer habeas counsel, something that California had no constitutional obligation to provide, California has created a distinct constitutionally-protected interest in court-appointed habeas counsel. California law creates no such constitutionally-protected interest because Redd's state-law right is merely a right to additional procedure in connection with the habeas process; it does not protect an independent substantive end. What is more, Redd has received exactly what he is entitled to receive as a matter of California law. He will get habeas counsel when counsel becomes available under the provisions of California law governing California's habeas counsel program. Since the constitution permitted California the option to not offer him habeas counsel at all and to require him to proceed pro se, California's supplemental offer of the alternative of habeas counsel expanded his rights beyond that which the federal constitution provides, even if Redd believes the supplemental offer is ineffective. His disagreement with the contours of the California program merely reflect Redd's desire to make California's procedures more robust than they are under applicable state law. Such disagreement with the contours of state law does not provide a basis for a federal constitutional claim.

Second, irrespective of the merits, principles of federalism and comity mandate that this Court abstain from entertaining Redd's constitutional claims because, if his class action lawsuit resulted in a judgment against the California Judiciary, a federal court would be

required to conduct an ongoing audit of the timeliness of the appointment of counsel for hundreds of putative plaintiffs on an ongoing basis. Under settled law such intrusion is impermissible because, under our federal system, even constitutional claims may not be utilized to interfere with matters in which States are supposed to have autonomy, such as the operation of their courts. That is because such interference risks undoing state policy choices by, among other things, dictating state or local budgetary priority. And that is what Redd's lawsuit is about. As Redd's pleading makes clear, Redd is disappointed with the policy choices California has made and the level of funding the California Legislature has decided to provide for California's habeas counsel program. His lawsuit improperly seeks to use federal law to force California to make different policy choices about the contours of a habeas counsel program that California had no constitutional obligation to provide in the first place.

This Court should affirm.

## STANDARDS OF REVIEW

This Court reviews de novo a district court's order dismissing a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Sanders v. City of Pittsburg*, 14 F.4th 968, 970 (9th Cir. 2021). In undertaking its review of the district court's ruling, the Court is not limited to the specific grounds upon which the district court relied. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1058 (9th Cir. 2004). It may instead "affirm the district court's holding on any ground raised below and fairly supported by the

record." *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1126 (9th Cir. 2009) (citing *Washington v. Confed. Bands & Tribes of Yakima Indian Nation*, 439 U.S. 477 n.20 (1979)).

The standard of review for abstention questions "remains unsettled." *Alaska Pretrial Detainees v. Johnson*, 745 F. App'x 61, 61 (9th Cir. 2018) (quoting *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015)). In this case, however, a de novo standard of review should apply. That is because the decision to abstain from interfering in ongoing state habeas proceedings is analogous to the decision to abstain from interfering in ongoing state criminal proceedings under *Younger v. Harris*, 401 U.S. 37 (1971). Both decisions concern whether to intervene in matters consisting of or arising out of criminal proceedings, although post-conviction habeas proceedings are in some respects civil in nature. *See Briggs v. Brown*, 3 Cal. 5th 808, 839 (2017); *People v. Duvall*, 9 Cal. 4th 464, 477 n.4 (1995). And, it is settled that *Younger* abstention determinations are reviewed de novo.[1] *See Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017).

## ARGUMENT

### I. Redd Fails To State A Viable Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property,

---

[1] Even if a different standard of review applied, this Court would still review "de novo whether the legal requirements for abstention are satisfied." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 783 (9th Cir. 2014).

without due process of law." U.S. Const. Amend. XIV, § 1. The starting point for any due process claim lies with the identification of the supposed liberty or property interest at issue. *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972). That is because the nature of the liberty or property interest will dictate whether it is constitutionally protected and the level of process, if any, that is due. *See Arnett v. Kennedy*, 416 U.S. 134, 155 (1974) ("The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests.").

"A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). Once there is "'a valid conviction, the criminal defendant has been *constitutionally* deprived of his liberty.'" *Id.* at 69 (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)) (emphasis added). "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera v. Collins*, 506 U.S. 390, 399 (1993). Here, because he has been convicted, Redd cannot simply cite a general right to be free from imprisonment or a capital sentence to maintain a due process claim. Rather, he must show that he has a post-conviction liberty or property interest that is constitutionally protected.

In his brief, Redd identifies two distinct state-created interests that he contends are constitutionally protected. First, Redd maintains that California has created a constitutionally-protected liberty interest

by giving him access to habeas review. AOB 27-33. Second, Redd maintains that California has also created a constitutionally-protected liberty and property interest through its enactment of laws that authorize the appointment of habeas counsel for indigent criminal defendants subject to a capital sentence. AOB 33-44. Yet, despite identifying two fundamentally distinct interests that he contends are protected, Redd conducts only a single analysis of whether California has afforded him the process that is constitutionally required. AOB 45-63. Further, and equally important, although he identifies two distinct interests that he contends are constitutionally protected, Redd does not separate the two in conducting his second prong analysis. *See id.* Rather, he collapses the two distinct allegedly protected interests and argues whether California's delay "in *appointing* Mr. Redd state habeas counsel violates what due process requires . . . ." AOB 45 (emphasis added).

As explained below, Redd's imprecision underscores the fundamental problem with his due process claim. Although California's habeas procedures create a protected liberty interest in Redd's right to seek habeas review, California has afforded Redd all the process he is constitutionally due in connection with that interest. By providing for the appointment of counsel for indigent defendants, California law does not create a separate and distinct constitutionally-protected liberty or property interest in connection with the right to counsel.

### A. Redd Has Been Afforded All The Process He Is Due In Connection With California's Habeas Procedures

California has adopted habeas procedures that allow even those whose convictions are final to collaterally attack their sentence and, upon a sufficient showing, secure a retrial or their release. *See* Cal. Penal Code § 1473. A convicted prisoner typically has a liberty interest in post-conviction habeas proceedings that could secure his or her release. *See Osborne*, 557 U.S. at 68.

However, the United States Supreme Court has repeatedly held that the federal constitution does not require a State to appoint counsel to mount collateral habeas attacks on their convictions. To the contrary, the Court has made clear that "[t]here is no right to counsel in postconviction proceedings . . . ." *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *see also Finley*, 481 U.S. at 555 ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today.") (citing *Johnson v. Avery*, 393 U.S. 483, 488 (1969)). The only theoretical exception, which the Supreme Court has yet to recognize, might be for claims for what it has described as "initial-review collateral proceedings," where state law does not allow the petitioner to bring a claim for ineffective assistance of trial counsel as part of the direct review process. *See Martinez v. Ryan*, 566 U.S. 1, 8 (2012). But, as the law currently stands, the Supreme Court has declined to recognize any such constitutional

requirement, even for such "initial-review collateral proceedings."[2] *See id.* at 16 (explaining the Court was not making a constitutional ruling that "would require the appointment of counsel in initial-review collateral proceedings," but rather merely an equitable ruling to avoid forfeiture of such unreviewed claims).

Given this law, Redd does not, and cannot, argue that any liberty interest that arises by virtue of the availability of habeas proceedings under California law, in and of itself, entitles him to counsel. Instead, as previously noted, Redd frames the question as whether California's delay in "*appointing* Mr. Redd counsel," AOB 45, 55 (emphasis added), violates his right to due process—thereby disregarding entirely Redd's ability to alleviate any delay by electing to proceed pro se. This is important because, as the district court correctly recognized, Redd and other indigent inmates sentenced to death have a choice: they "must choose between lengthy delays in the appointment of counsel or proceeding pro se and waiving the right to counsel." ER-17; *see also In re Barnett*, 31 Cal. 4th 466, 476-78 (2003) (recognizing inmate's right to file pro se habeas materials covering matters other than those for which they have requested counsel to represent them).

Because the ability to bring collateral pro se habeas challenges alone satisfies the federal constitution, *see Garza*, 139 S. Ct. at 749; *Finley*, 481 U.S. at 555; *Martinez*, 566 U.S. at 8, a federal constitutional

---

[2] For his part, Redd raised an ineffective assistance of trial counsel claim in connection with his direct appeal to the California Supreme Court. *See Redd*, 48 Cal. 4th at 725-28 (rejecting Redd's ineffective assistance of counsel claim during Redd's direct appeal).

violation cannot arise from the fact that California also offers the additional alternative of appointed counsel. This remains true irrespective of Redd's complaints about the adequacy of that alternative. And, here, even though the district court identified Redd's right to elect between the constitutionally-adequate alternative of proceeding pro se, and the not-constitutionally-required alternative of appointment of habeas counsel, ER-13-16, Redd never attempts to argue that California's offering of the election itself deprives him of due process, AOB 47-63. The reason for Redd's omission is self-evident: that election poses no constitutional concerns, given that California had no constitutional obligation to provide Redd with that election in the first place.

### B. California Did Not Create An Independent Liberty Or Property Interest When It Elected To Appoint Counsel For Inmates Subject To A Capital Sentence

Redd next argues that California created a constitutionally-protected liberty or property interest when it decided to appoint habeas counsel for indigent inmates subject to a capital sentence. AOB 33-44. As Redd sees things, although California may not have had a constitutional obligation to provide habeas counsel in the first place (just like it was under no constitutional obligation to provide direct appellate review), California created a constitutionally-protected liberty interest when it elected to do so. AOB 33-41. Redd also maintains that California law providing for appointment of habeas counsel creates a protected property interest, even if it is not a protected liberty interest. AOB 41-44. Respectfully, Redd's arguments lack merit.

### 1. California Law Does Not Create A Liberty Interest In The Appointment Of Habeas Counsel

As the Supreme Court has explained, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Rather, "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* For that reason, this Court has repeatedly held in cases like *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995), and *James v. Rowlands*, 606 F.3d 646 (9th Cir. 2010), that "a state procedural right which is itself designed to facilitate the protection of more fundamental substantive rights" does not create a separate and distinct constitutionally-protected liberty interest. *Bonin*, 59 F.3d at 842; *James*, 606 F.3d at 656-57; *accord Dix v. County of Shasta*, 963 F.2d 1296, 1300 (9th Cir. 1992) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause"), *disapproved on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Relying upon these principles established in cases like *Bonin* and *James*, the district court rejected Redd's contention that California had created a constitutionally-protected liberty interest in his right to habeas counsel. ER-13-16. The district court instead concluded that, consistent with those cases, while Redd had a constitutionally-protected liberty interest in connection with his right to seek habeas release, he did not have a constitutionally-protected interest in the specific procedures California elected to utilize to allow him to vindicate that substantive right. ER-15-16. As the district court explained, "California's policy choice to appoint habeas counsel for death row

inmates does not create new constitutional obligations where '[s]tates have no obligation to provide postconviction relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.'" ER-16 (quoting *Finley*, 481 U.S. at 552). The district court got it right.

"[W]hen a State chooses to offer help to those seeking relief from convictions,' [federal] due process does not 'dictat[e] the exact form such assistance must assume.'" *Osborne*, 557 U.S. at 69 (quoting *Finley*, 481 U.S. at 559). That is because a convicted inmate's "right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.* Accordingly, in evaluating the constitutional adequacy of California's habeas procedures, "the question is whether . . . the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 448 (1992)). Under this standard, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*

Redd cannot clear the high hurdle that *Osborne* sets for his due process claim. That is because, fundamentally, it cannot be said that California's alleged delay in appointing habeas counsel, an act not constitutionally required in of itself, "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Cf. Osborne*, 557 U.S. at 69 (quoting *Medina*, 505 U.S. at 448). *Osborne* itself makes this point clear because, like *Bonin* and *James*, *Osborne* recognizes that "[p]rocess is not an end in itself" and carefully distinguishes between an inmate's constitutionally-protected liberty interest in the inmate's right to challenge his or her conviction and the adequacy of a state's procedures to enable an inmate to vindicate that interest. *Osborne*, 557 U.S. at 68-70. In so doing, *Osborne* establishes that even for something as potentially important as access to DNA evidence, the "flexibility" afforded to states "in deciding what procedures are needed in the context of postconviction relief" warrants deference to a state's choice of procedures. *Id.*

And, here, while California has enacted statutes to provide court-appointed counsel to indigent inmates subject to a capital sentence, the contours of such appointments are governed by a variety of other statutes and the state-law policy choices that affect the speed at which such appointments can be made. As explained, California has done so by limiting the Habeas Corpus Resource Center (the state agency created to help represent capital defendants in post-conviction habeas proceedings) to 34 attorneys, ER-34-35, directing the Judicial Council and California Supreme Court to adopt competency standards that limit the pool of available private attorneys available to handle habeas cases, 1998 Cal. Stat. ch. 485 § 98, p. 3404, and by limiting the pool of available funding to a fraction of what the California Commission on the Fair Administration of Justice recommends, SER-151-52. Indeed, for that very reason, when confronted with the question of whether

California law mandates that habeas cases be resolved in a particular time frame, the California Supreme Court concluded that it does not—precisely because the California Legislature cannot force California's courts to finally adjudicate habeas petitions within five years without appropriating the necessary funding to ensure that happens. *See Briggs v. Brown*, 3 Cal. 5th 808, 850-62 (2017).

It is those state-law policy choices with which Redd takes issue in this litigation. By definition, Redd's lawsuit seeks to force California to appoint counsel more quickly than California law requires. In that regard, the parallels between Redd's lawsuit and *Osborne* are striking. *See* ER-31-37 (Redd's allegations about the "systemic failure to appoint qualified habeas corpus counsel" and how it has resulted from, among other things, "California's failure to provide sufficient compensation" and "underfunding of the capital indigent defense program"). In other words, because he does not like the contours of the court-appointed counsel program that California has elected to provide, Redd desires to use *federal law* to remake those limits by claiming California has deprived him of due process by failing to provide what Redd thinks he should receive. But, for all the reasons *Osborne* explains, that is not how procedural due process operates in the context of state habeas relief. *See Osborne*, 557 U.S. at 68-70

Despite all of this, Redd maintains that the "district court misunderstood the relevant inquiry and mischaracterized the nature of the right at issue." AOB 35-37. While acknowledging that case law makes clear that "process is not an end in itself," Redd contends California's procedures for appointing habeas counsel for indigent

capital inmates are different because, by providing court-appointed counsel, California law "both guarantees a substantive entitlement and 'protects [a] substantive end.'" AOB 35-36 (quoting *Bonin*, 59 F.3d at 842). In particular, Redd argues that *Bonin* itself recognized that the right to effective counsel is "a 'fundamental *substantive*' guarantee." AOB 36-37 (quoting *Bonin*, 59 F.3d at 842). Further, citing *Olim v. Wakinekona,* 461 U.S. 238 (1983), *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993), *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995), and *Campbell v. Blodgett*, 997 F.2d 512 (9th Cir. 1992), Redd argues that a State may create a protected liberty interest by establishing or imposing substantive requirements that control how criminal penalties are imposed. AOB 40-41.

Taking these contentions in order, Redd's contention that he is entitled to counsel because the right to counsel is "a fundamental substantive guarantee," AOB 36-37, is circular. It is true that, in the context of a criminal trial or a non-discretionary direct criminal appeal, the right to counsel is a fundamental guarantee. But that is because the United States Supreme Court has held that there is a *substantive* constitutional right to counsel in the context of such proceedings. *See Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963). That substantive right is made express in the Sixth Amendment and has been determined to apply to the states by virtue of the Fourteenth Amendment. *Id.* But that right is a *freestanding* substantive right that exists without regard to the procedural due process framework that Redd seeks to invoke in this case. *See Osborne*, 557 U.S. at 69 ("Given a valid conviction, the criminal defendant has been *constitutionally*

deprived of his liberty") (quoting *Dumschat*, 452 U.S. at 464) (emphasis added). And, as explained, in the context of habeas relief the Supreme Court has never recognized a substantive constitutional right to counsel. *See Garza*, 139 S. Ct. at 749; *Finley*, 481 U.S. at 555; *Martinez*, 566 U.S. at 8. Accordingly, Redd's reliance upon the supposed "fundamental substantive guarantee" the right to counsel provides is misplaced.

Further, as to Redd's reliance on *Olim*, *Oviatt*, *Fetterly*, *Walker*, and *Campbell*, none of those cases support Redd's ultimate position in this litigation. AOB 40-41. To the contrary, those cases are all consistent with the district court's determination that Redd has no protected liberty interest in his right, under California law, to have habeas counsel appointed for him within a certain period of time.

*Olim* and *Oviatt* are prisoner confinement cases that deal with when state regulations create a protected liberty interest in a prisoner's confinement in a particular institution, under certain conditions, or for a set period of time before a preliminary hearing takes place. *Olim*, 461 U.S. at 249-50; *Oviatt*, 954 F.2d at 1474-75. Those cases simply recognize the general proposition that "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim*, 461 U.S. at 249; *see also Oviatt*, 954 F.2d at 1474 (citing *Olim* for the same proposition). But, like *Osborne*, *Bonin*, and *James*, both cases simultaneously recognized that "[p]rocess is not an end itself" and there must therefore be "a substantive interest to which the individual has a legitimate claim of entitlement" for a state-created interest to be constitutionally protected. *Olim*, 461 U.S. at 250.

Applying those principles, *Olim* concluded that a prisoner lacked a constitutionally-protected liberty interest in prison regulations governing how prison transfers were to be conducted. *Olim*, 461 U.S. at 249-50. It did so because the regulations at issue "place[d] no substantive limitations on official discretion and thus create[d] no liberty interest entitled to protection under the Due Process Clause." *Id.* *Oviatt*, in contrast, found Oregon's preliminary hearing and arraignment laws created a protected liberty interest because those state laws *required* that confinement end after 60 days unless a preliminary hearing is conducted and that an arraignment occur within 36 hours if the defendant is in custody. *Oviatt*, 954 F.2d at 1475. The *Oviatt* panel did so because it saw "the presence of the word 'shall' along with particularized criteria," which meant "[t]here [wa]s no room for discretion in th[ese] specific directive[s]" mandating release. *Id.*

*Fetterly*, *Walker*, and *Campbell*, on the other hand are all, like *Bonin*, criminal cases that involved circumstances in which state law dictated the *manner* in which the criminal case was to be conducted under state law. Applying the same principles as *Olim* and *Oviatt*, those cases likewise concluded that mandatory state laws that imposed substantive limitations on official action (because they "provide[] a specific method for determining whether a certain sentence shall be imposed") created constitutionally-protected interests. *See Walker*, 50 F.3d at 673. Thus, in *Fetterly*, the panel concluded that a mandatory Idaho law that required aggregating and mitigating circumstance be weighed before a capital sentence is imposed created a protected liberty interest. *Fetterly*, 997 F.2d at 1301. Likewise, the *Walker* panel

concluded that a mandatory Nevada law that required a trial court to consider and weigh certain criteria before sentencing a defendant under Nevada's habitual offender statute created a protected liberty interest. *Walker*, 50 F.3d at 672-73. And, finally, the *Campbell* panel concluded that a Washington law that required appellate courts to conduct their review of a criminal conviction in a particular manner created a protected liberty interest; although the panel concluded that a due process claim predicated upon that Washington law was not cognizable on federal habeas review because it would have required the panel to second guess the Washington court's application of Washington law. *Campbell*, 997 F.2d at 522.

In other words, all of these cases are consistent with *Bonin* and *James*, insofar as they stand for the proposition that mandatory state-law requirements that create substantive limitations on how the government must act or the punishment the government can impose may create protected liberty interests. But as *Bonin* and *James* explain, it is still true that for state law to create a protected liberty interest, "the state law at issue 'must provide more than merely procedure; it must protect some substantive end.'" *Bonin*, 59 F.3d at 842 (quoting *Dix*, 963 F.2d at 1299). Fundamentally, that is what the dispute is about: whether the California laws providing for appointment of habeas counsel for indigent inmates subject to a capital sentence are merely procedural or contains mandatory limitations on official decision-making that protect a substantive end.

As the district court correctly concluded, California law falls into the former category—not the latter. Like the state law at issue in

*Bonin* that required that a criminal defendant charged with a capital offense be permitted to have two attorneys argue on his or her behalf, California's habeas counsel appointment procedures merely provide additional state-law process; they do not mandate any substantive end. *Cf. Bonin*, 59 F.3d at 841-42. That is true even if the relevant statutes governing habeas appointments use the mandatory language "shall" when describing how that additional state-law process is to be provided. That is because, fundamentally, what is missing in this case, and why it is distinguishable from cases like *Oviatt, Fetterly*, *Walker*, and *Campbell*, are state-law requirements that mandate a particular substantive end. *See id.* at 842 (explaining California law allowing two attorneys to argue did not create a constitutionally-protected interest because "[i]t contains neither 'substantive predicates' protecting a substantive end nor 'explicitly mandatory language' requiring a particular result if the 'substantive predicates' are met."). Here, state law provides that Redd is entitled to court-appointed counsel; but it does not mandate any particular outcome as a result. It does not dictate that Redd's conviction be vacated, or that his capital sentence be overturned, as a result of habeas counsel being appointed for him.

That is why it is important to keep the Supreme Court's observation from *Osborne* in mind: while it is true the "state-created right" to pursue habeas "can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right," that only happens when "the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'

or 'transgresses any recognized principle of fundamental fairness in operation.'" *Osborne*, 557 U.S. at 68-69. That is simply not this case, as the district court correctly found.

Accordingly, California law does not create a liberty interest in Redd's state-law right to habeas counsel, and there is therefore no reason to consider whether the alleged deprivation of that non-existent interest violated due process.

### 2. California Law Does Not Create A Property Interest In How Quickly Counsel Is Appointed

Although he did not make the argument during the proceedings below, and the district court was therefore denied occasion to consider Redd's contentions in that regard, Redd alternatively maintains that even if he does not have a liberty interest in court-appointed counsel, he has a protected property interest in his right to counsel. AOB 42-44. This argument can be easily disposed of because, to the extent the provision of counsel can be considered to be a protected "property interest" for purposes of due process, Redd does not have a constitutional claim. To the contrary, California law defines the contours of whatever state-law property right Redd has and, under California law, Redd has received everything to which he is entitled.

As the Supreme Court has explained, "[p]roperty interests, of course, are not created by the Constitution." *Roth*, 408 U.S. at 577. "Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law – rules or understanding that secure certain benefits that

support claims of entitlement to those benefits." *Id.* For this reason, "[r]esolution of the federal issue begins . . . with a determination of what it is that state law provides." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005). That is because a state-law property interest "attain[s] [its] constitutional status by virtue of the fact that [it] ha[s] been initially recognized and protected by state law," at which point "the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Paul v. Davis*, 424 U.S. 693, 710-11 (1976).

But the Due Process Clause does not define the contours of state-law interests or require states to remake their laws to provide new or different interests. *See Gonzales*, 545 U.S. at 761-73 (plaintiff had no due process claim under Colorado law requiring police to enforce domestic violence retraining orders because, despite apparently mandatory language in the statute, the contours of Colorado law gave police discretion on whether to enforce restraining orders); *Roth*, 408 U.S. at 578 (assistant professor at Wisconsin university had no due process claim in connection with university decision not to reappoint him because Wisconsin law did not give professor any guarantee of continued employment).

Here, Redd fails to show that he is being deprived of what California law provides. In that regard, it is important to focus on the particulars of Redd's allegations and the precise contours of the due process claim he is attempting to pursue. As Redd's complaint makes clear, his lawsuit takes issue not with whether he stands to receive the benefit that California law affords him; but rather with the contours of

that state-law benefit and how it is not as robust as Redd desires. That is, Redd does not dispute that he will receive habeas counsel once counsel becomes available to represent him. Instead, he takes issue with the policy choices that California has made, including the funding limitations that the California Legislature has imposed on the courts, which impact how quickly counsel can be appointed for him. ER-33-38 (detailing the alleged causes of the systemic delay, such as insufficient funding, high competency standards, and difficult nature of the work); *see also* AOB 12-13 ("The causes of those delays are well documented. Defendants' rules and policies, combined with legislative inaction and underfunding, are primarily responsible.").

The problem for Redd is that the matters he identifies are features of the state-law rights Redd has been afforded under California law. That matters because, for purposes of a procedural due process claim, state law controls the nature of the property interest Redd has been granted under California law. *See Gonzales*, 545 U.S. at 761-73; *Roth*, 408 U.S. at 578. For that straightforward reason, Redd has no constitutional claim that he has been deprived of the state-law rights that California has afforded him. The simple reality is that Redd has been provided precisely what state law provides; he simply wants state law to give him greater rights than it does. That complaint, however, cannot serve as the predicate for a federal due process claim.

## II. Alternatively, This Court Should Affirm On Abstention Grounds

Although the district court declined to abstain from hearing Redd's lawsuit, ER 11-13, this Court may affirm the judgment on any alternative ground that the record supports. Here, the record supports abstention.

The putative class action claims that Redd asserts and the declaratory relief he seeks would inevitably require an ongoing federal audit of the California Judiciary and examination of a substantial number of individual cases. This extraordinary federal intrusion into state judicial affairs and the administration of individual matters would violate established principles of federalism and comity. Accordingly, abstention is warranted in this case.

"The Supreme Court has repeatedly recognized a longstanding public policy against federal court interference with state court proceedings based on principles of federalism and comity." *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015) (citation and quotation marks omitted). Because of this longstanding policy, federal courts "may not entertain actions that seek to impose an ongoing federal audit of state proceedings." *E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1123 (9th Cir. 2012) (per curiam) (citation, quotation marks and ellipsis omitted). For example, a federal court should not enter a judgment that would require it "to monitor the *substance* of individual cases on an ongoing basis to administer its judgment." *Miles*, 801 F.3d at 1065 (quoting *Courthouse News*, 750 F.3d at 790); *see also Alaska Pretrial Detainees*, 745 F. App'x at 62.

Whether a federal court should abstain from exercising jurisdiction depends on the facts alleged. *See Miles*, 801 F.3d at 1065. In *Miles*, this Court considered whether the district court properly abstained from hearing a constitutional challenge to a plan for reducing the overall number of courthouses available to hear unlawful detainer cases in Los Angeles County. *See id.* at 1061-63. Plaintiffs asked the district court to enjoin the Los Angeles County Superior Court from closing any courthouses that heard such cases, but the requested injunction would have placed the district court "in the role of receiver for a state judicial branch," and so the case was not suitable for adjudication in federal courts. *Miles*, 801 F.3d at 1064 (citation and quotation marks omitted).

In *E.T. v. Cantil-Sakauye*, this Court considered whether the district court properly abstained from hearing a challenge to the adequacy of court-appointed attorneys. *See* 682 F.3d at 1122-23. Plaintiffs there alleged that resource limitations had resulted in "crushing" caseloads for child dependency courts and court-appointed attorneys, frustrating the ability of attorneys to provide effective assistance of counsel. *See id.* at 1122. The Court reasoned: "Because the question is one of adequacy of representation, potential remediation might involve examination of the administration of a substantial number of individual cases." *Id.* at 1124. If the Court declared that "the current Dependency Court attorney caseloads unconstitutional or unlawful," the Court continued, "the Defendants' compliance with that remedy and its effect in individual cases could be subject to further challenges in federal district court." *Id.* at 1125. These future

challenges would inevitably lead to piecemeal interruptions of state proceedings. *See id.*

In a third case, *Los Angeles County Bar Association v. Eu*, this Court affirmed the district court's judgment in favor of state officials, rejecting the plaintiffs' claim that the number of superior court judges in Los Angeles County was unconstitutional in light of heavy caseloads. *See* 979 F.2d 697, 699-700, 708 (9th Cir. 1992). The panel majority held, with "some trepidation," that principles of federalism and comity did not require the federal courts to refrain from issuing a declaration concerning "average court delays." *Id.* at 703-04. Judge Kleinfeld concurred in the result, but disagreed with the majority's abstention ruling and would have declined to reach the merits. *See id.* at 708-09 (Klein, J., concurring) (citing *Ad Hoc Comm. on Judicial Admin. v. Massachusetts*, 488 F.2d 1241 (1st Cir. 1973)).

*Miles*, *E.T.*, and *Eu* all considered whether the State had allocated sufficient judicial resources (courthouses, court-appointed attorneys, and judges, respectively) in light of public demand.

The district court here also considered another case, *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), in which this Court held that the district court erred in declining jurisdiction over a dispute concerning same-day access to civil complaints filed in Ventura County. In that case, the plaintiff sought a declaration that denial of same-day access violated the First Amendment. *See id.* at 790-91. Thus, it asked this Court to establish a "bright-line" rule that, if established, would not require "intensive, context-specific legal inquiry"

in future cases. *Id.* at 791. As a result, the requested declaration posed little risk of ongoing federal audit or continuing intrusion into conduct of state proceedings. *See id.* at 792. *But see Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1074 (7th Cir. 2018) (reaching opposite abstention result in "nearly identical" case).

Contrary to the district court's abstention ruling, ER 11-13, this case is unlike *Eu* and *Courthouse News* and more like *Miles* and *E.T.* Redd has not asked for a bright-line rule to govern his claim or the putative class claims. For example, Redd does not ask this Court to declare that California violates his right to due process when it does not appoint a habeas attorney within five years, or any other specified duration. Rather, he asks for a declaration that "Defendants' failure to timely appoint counsel is in violation of the rights of Plaintiff Redd and the Class he represents . . . ." ER-41. Because Redd and the putative class members have been awaiting appointment of counsel for widely varying amounts of time, ER-36, and each case poses its own unique complexities in terms of the potential workload of any appointed habeas counsel, assessing whether each prisoner has sustained an alleged due process violation would require an individualized timeliness assessment for what Redd alleges are hundreds of putative class members.

The district court reasoned that "Plaintiff also seeks a bright-line declaration that the systems are unconstitutional." ER-12-13 (citing Redd's prayer for relief). This reasoning was erroneous; merely declaring that a "system" is unconstitutional does not establish a bright-line rule. *See E.T.,* 682 F.3d at 1124 (abstaining where plaintiffs challenged adequacy of "juvenile dependency court system") (citation

and quotation marks omitted). Even if the court declared that the "system" was unconstitutional, the question whether an individual prisoner is entitled to counsel after one, two, five, ten, or any other specified number of years would remain, as would the problem of how to order a remedy in the event of any alleged violation. These individualized constitutional determinations, in each state habeas proceeding, are the type of federal intrusion that *Miles* and *E.T.* foreclose.

Moreover, although Redd has not asked for a bright-line rule, even a bright-line rule would be impossible enforce without undue intrusion into the funding and administration of California courts. The district court's opinion illustrates the point. In its reasoning in support of a determination that it had subject matter jurisdiction, the court recognized the role of the California Legislature in providing funding for state-appointed habeas counsel. ER-9. The district court also reasoned that—according to the complaint—Defendants have some ability to attract qualified habeas counsel for appointment in state habeas cases. ER 9-10. For example, the district court reasoned that defendants could "allocate additional funds for habeas counsel from their own budget . . . ." ER-9. At the very least, the district court continued, "the Superior Court Defendants could more actively publicize the dire need for eligible volunteers and announce compensation or reimbursement standards for the first time since the passage of Proposition 66." ER-10.

Thus, in any future case to enforce the requested declaration, the federal court would apparently determine whether both the California

Judiciary and California Legislature had allocated sufficient funds to the state's capital habeas counsel program, whether the hourly rate was attractive, whether the budget for litigation expenses was adequate, and whether the state courts' public-relations efforts were effective. *See* ER-9-10. This would be the dictionary definition of an ongoing federal audit of state proceedings, in violation of *E.T.* *See* 682 F.3d at 1123. Because each year brings a new budget and new set of economic conditions under which to evaluate whether hourly rates will bring qualified attorneys into the program, under such a declaration, the federal court's auditing of the timeliness of the appointment of capital habeas counsel for each putative class member would never end. Abstention is therefore warranted. *See Miles*, 801 F.3d at 1065-66 (affirming abstention where changing circumstances would require ongoing reevaluation of state compliance).

The district court reasoned that this case is "unlike *E.T.*, in which plaintiffs sought federal court oversight over the *competency* of individual state-court-appointed counsel for foster children, and more like *Eu*, in which the plaintiff sought a declaration that the *quantity* of judges in Los Angeles County was so insufficient that litigants were deprived of their due process rights." ER-13 (italics in original). But the distinction between competency and quality is illusory; the alleged reason for inadequacy of court-appointed counsel in *E.T.* was an insufficient *quantity* of attorneys in relation to caseloads. *See E.T.*, 682 F.3d at 1122. The plaintiffs in *E.T.* could not have cured their federalism and comity issues by alleging that instead of high caseloads

per attorney, the dependency courts had appointed an insufficient number of attorneys per case.

In any event, a declaration in this case would require far greater federal intervention and monitoring than in either *E.T.* or *Eu*. In *Eu*, the Court reasoned that if the Los Angeles County Superior Court was unconstitutionally slow, then the California Legislature could authorize more judicial positions and the California Governor could fill them. *See Eu*, 979 F.2d at 701. Embedded in this reasoning are assumptions that do not hold in this case: that funding exists and that qualified attorneys will accept appointments if positions are made available. In short, many lawyers want to be judges, while few lawyers are qualified and willing to serve as state habeas counsel. Thus, whereas a two-judge majority could say with trepidation that a declaration might not require ongoing federal supervision in *Eu* (a moot point, given that plaintiff lost on the merits), enforcing a declaration in this case would certainly require extensive federal supervision of and intervention into potentially hundreds of individual proceedings here.

"Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citation and quotation marks omitted). As demonstrated, federal supervision of the budgetary and counsel-recruiting processes of the State of California would upset that balance. Accordingly, even if Redd could state a claim, the dismissal was appropriate on abstention grounds.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order dismissing Redd's lawsuit. Redd lacks a constitutionally-protected interest in court-appointed counsel. What is more, principles of federalism and comity also require that this Court abstain from entertaining Redd's putative class action suit given that it would require a federal court to oversee the appointment of counsel in potentially hundreds of cases.

Dated: December 20, 2021

Respectfully submitted,

/s/ Raymond A. Cardozo
Raymond A. Cardozo
Brian A. Sutherland
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
rcardozo@reedsmith.com
bsutherland@reedsmith.com

Kasey J. Curtis
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
Tel: (415) 543-8700
Fax: (415) 391-8269
kcurtis@reedsmith.com

*Counsel for Defendants-Appellees*

## STATEMENT OF RELATED CASES

Defendants-Appellees are unaware of any related cases under Local Rule 28-2.6.

Dated: December 20, 2021

Respectfully submitted,

/s/ Raymond A. Cardozo
Raymond A. Cardozo

## CERTIFICATE OF COMPLIANCE

1. This Answering Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1 because it contains 10,352 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This Answering Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Century Schoolbook.

Dated: December 20, 2021

Respectfully submitted,

/s/ Raymond A. Cardozo
Raymond A. Cardozo

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 20, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: December 20, 2021

/s/ Raymond A. Cardozo
Raymond A. Cardozo