No. 21-55464
PRO BONO

---

IN THE
# United States Court of Appeals for the Ninth Circuit

---

STEPHEN MORELAND REDD, individually and on behalf of all others similarly situated,
*Plaintiff-Appellant*,

*v.*

TANI GORRE CANTIL-SAKAUYE, Chief Justice of California; KIMBERLY MENNINGER, Judge of the Superior Court of California, County of Orange, et al.,
*Defendants-Appellees*.

---

On Appeal from the United States District Court for the Central District of California,
No. 2:16-cv-01540, Hon. Dolly M. Gee, Hon. Patrick J. Walsh

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT STEPHEN MORELAND REDD**

---

Ronald A. McIntire
Taylor R. Russell
Perkins Coie LLP
1888 Century Park East 1700
Los Angeles, CA 90067

Paul David Meyer
Karim J. Kentfield
Lillian J. Mao
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5806

Mark S. Davies
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. Defendants' 25-Year Delay In Appointing Mr. Redd Counsel Violates His Protected Liberty Interest In State Habeas Review. ........ 4

A. The Due Process Clause protects Mr. Redd's liberty interest in state habeas review. ........ 5

B. Defendants' delay violates the liberty interest in habeas review. ........ 6

1. The initial option to proceed pro se does not render appointment delays constitutional. ........ 7

2. Finding that delays violate due process does not require recognizing a constitutional right to state habeas counsel. ........ 11

3. Defendants concede that delay in habeas review causes prejudice. ........ 12

II. Defendants' Delay Independently Violates Mr. Redd's Protected Liberty And Property Interests In California's Statutory Guarantee Of Habeas Counsel. ........ 14

A. California law creates a liberty interest in the appointment of counsel. ........ 14

B. California's guarantee of counsel also creates a protected property interest. ........ 22

III. Abstention Is Inapplicable And Unwarranted. ........ 27

A. The district court properly concluded no ground for abstention exists. ........ 28

B. This Court's precedent highlights why abstention is inappropriate. ........ 30

C. Defendants' speculation about a possible class does not support abstention. ........................................ 35

CONCLUSION ........................................................................... 36

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anderson*,
447 P.2d 117 (Cal. 1968) ... 6

*Ashmus v. Calderon*,
123 F.3d 1199 (9th Cir. 1997) ... 8

*In re Barnett*,
73 P.3d 1106 (Cal. 2003) ... 9, 10

*Bd. of Pardons v. Allen*,
482 U.S. 369 (1987) ... 12

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ... 23

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ... 16, 17, 18, 19

*C-Y Dev. Co. v. City of Redlands*,
703 F.2d 375 (9th Cir. 1983) ... 27, 29

*Campbell v. Blodgett*,
997 F.2d 512 (9th Cir. 1992) ... 19

*Carlo v. City of Chino*,
105 F.3d 493 (9th Cir. 1997) ... 18

*In re Clark*,
855 P.2d 729 (Cal. 1993) ... 10

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ... 12, 24, 25

*Coe v. Thurman*,
922 F.2d 528 (9th Cir. 1990) ... 25

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .................................................................... 28

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ....................................... 27, 29, 30, 31, 33

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ........................................................ 28, 30

*Dist. Att'ys Off. for Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) .................................................................. 20, 22

*E.T. v. Cantil-Sakauye*,
682 F.3d 1121 (9th Cir. 2012) ................................................. 29, 33

*Fetterly v. Paskett*,
997 F.2d 1295 (9th Cir. 1993) ....................................................... 19

*Geneva Towers Tenants Org. v. Federated Mortg. Invs.*,
504 F.2d 483 (9th Cir. 1974) ......................................................... 23

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ...................................................................... 12

*Green v. City of Tucson*,
255 F.3d 1086 (9th Cir. 2001) ....................................................... 28

*Greene v. Babbitt*,
64 F.3d 1266 (9th Cir. 1995) ......................................................... 22

*Herrera v. Collins*,
506 U.S. 390 (1993) ...................................................................... 14

*James v. Rowlands*,
606 F.3d 646 (9th Cir. 2010) ......................................................... 17

*Johnson v. Roberts*,
95 F.3d 48 (5th Cir. 1996) ............................................................. 13

*Kaley v. United States*,
571 U.S. 320 (2014) ...................................................................... 21

*L.A. Cnty. Bar Ass'n v. Eu,*
979 F.2d 697 (9th Cir. 1992) .......... 31, 32

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 26

*Marsh v. Cnty. of San Diego*,
680 F.3d 1148 (9th Cir. 2012) .......... 15

*Martinez v. Ryan*,
566 U.S. 1 (2012) .......... 5, 9, 10, 11, 17

*Massie v. Sumner*,
624 F.2d 72 (9th Cir. 1980) .......... 13

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 6

*McFarland v. Scott*,
512 U.S. 849 (1994) .......... 9

*Medina v. California*,
505 U.S. 437 (1992) .......... 20, 22

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) .......... 26

*Miles v. Wesley*,
801 F.3d 1060 (9th Cir. 2015) .......... 32, 33

*Miller v. Oregon Bd. of Parole & Post-Prison Supervision*,
642 F.3d 711 (9th Cir. 2011) .......... 6

*In re Morgan*,
237 P.3d 993 (Cal. 2010) .......... 8, 9

*Nelson v. Colorado*,
137 S. Ct. 1249 (2017) .......... 21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) .......... 28

*Olim v. Wakinekona*,
461 U.S. 238 (1983) .......... 17

*Phillips v. Vasquez*,
56 F.3d 1030 (9th Cir. 1995) .......... 13, 22

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) .......... 28

*Rheuark v. Shaw*,
628 F.2d 297 (5th Cir.1980) .......... 13

*Rinaldi v. Yeager*,
384 U.S. 305 (1966) .......... 12

*Schlup v. Delo*,
513 U.S. 298 (1995) .......... 14

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) .......... 23

*Tr. & Inv. Advisers, Inc. v. Hogsett*,
43 F.3d 290 (7th Cir. 1994) .......... 28

*Walker v. Deeds,*
50 F.3d 670 (9th Cir. 1995) .......... 19

*Wolff v. McDonnell*,
418 U.S. 539 (1974) .......... 12

*Yee v. City of Escondido*,
503 U.S. 519 (1992) .......... 26

**Statutes & Regulations**

42 U.S.C. § 1983 .......... 31

Cal. Gov't Code § 68662 .......... 7, 15

**Other Authorities**

Bill Analysis, Senate Bill 513, enacted as 1997 Cal. Stats. Ch. 869, https://tinyurl.com/yckns2mb ................................................ 8

Cal. Sup. Ct. Policies Regarding Cases Arising from Judgments of Death, http://tinyurl.com/2p8892rc ................................ 8

## INTRODUCTION

Defendants concede that the Constitution protects Stephen Redd's interest in state habeas review of his capital conviction and sentence. The central question this appeal thus presents is whether defendants' quarter-century delay in appointing the counsel that California guarantees for habeas proceedings violates that protection. It does; that should be manifest. Defendants' contrary argument rests entirely on their assertion that habeas petitioners have the initial option of proceeding pro se. That position presents a false premise and misconstrues the constitutional inquiry.

The false premise is defendants' assertion that they have provided capital habeas petitioners the transparent, upfront choice to wait decades for counsel or proceed unrepresented. That has not been the choice presented. The state has promised reasonably timely, effective counsel, which defendants themselves have emphasized is essential to develop meritorious habeas claims. But when an individual chooses to proceed with counsel, it triggers undisclosed, decades-long delays in the investigation, development, and review of claims. Defendants effectively shut the door to habeas review for those who elect counsel by

delaying appointments until long after a petitioner's claims become significantly prejudiced (while rejecting any pro se filings).

Defendants' argument also misconstrues the constitutional inquiry, because it suggests that finding a due process violation here requires recognizing a standalone constitutional right to state habeas counsel. It does not. Regardless of whether the Constitution required California to offer counsel to petitioners at the outset, due process safeguards attached when it did so as part of the state habeas review system. That is no different from myriad other contexts—from parole to welfare—where no independent constitutional right to a given process exists, but, once a state institutes that process, due process protections attach. Here, defendants' delay in appointing counsel violates the due process protections that safeguard Mr. Redd's right to the meaningful habeas review that California guarantees.

Given that straightforward resolution of this appeal, the Court need not resolve whether California's statutory guarantee of counsel independently creates constitutionally protected liberty and property interests, apart from the interest in state habeas review itself. However, if the Court reaches the question, it should hold that

California law creates both types of protected interests. It creates a protected liberty interest because the appointment of habeas counsel is a substantive guarantee—one that all agree is essential for the adequate presentation of habeas claims. And it creates a protected property interest because habeas counsel is a valuable benefit that California has guaranteed to indigent prisoners. Defendants' appointment delay of 25 years[1] (and counting) violates due process protections of those interests.

Finally, defendants' request for abstention is not only unwarranted, but is particularly flagrant in this case, where the constitutional violation arises from defendants' failure to act for decades. The district court correctly found no legal basis to abstain from its "virtually unflagging obligation" to exercise jurisdiction. ER11. The rarely applied type of abstention that defendants invoke applies only in narrow circumstances where relief would require "an ongoing federal audit of state proceedings." Answering Brief ("AB") 34. Mr. Redd seeks no such relief. He requests a declaration that defendants'

---

[1] The delay will reach 25 years this month.

appointment delays violate his federal constitutional rights. The federal courts should issue that relief.

## ARGUMENT

### I. Defendants' 25-Year Delay In Appointing Mr. Redd Counsel Violates His Protected Liberty Interest In State Habeas Review.

Unlike the district court, defendants acknowledge that Mr. Redd has a constitutionally protected liberty interest in obtaining meaningful state habeas review of his conviction and sentence. AB13, 18, 19. Defendants nevertheless maintain that "California has afforded Redd all the process he is due under the federal constitution in connection with that liberty interest." AB13. That is incorrect. A state may not, consistent with due process, design a habeas system that promises timely, effective counsel to indigent prisoners; require that petitioners raise critical claims exclusively during that review; emphasize the importance of counsel in developing those claims; acknowledge when a habeas petitioner accepts the offer of counsel, thereafter precluding the petitioner from proceeding pro se; and then delay appointments 25 years (and now suggest that the petitioner should never have taken the

offer of counsel in the first place). That system of bait-and-wait is a patent due process violation.

### A. The Due Process Clause protects Mr. Redd's liberty interest in state habeas review.

Defendants agree: Mr. Redd maintains a "constitutionally-protected liberty interest in his state-law right to use California's habeas procedures to collaterally attack his conviction." AB13; *see also* AB18 ("California's habeas procedures create a protected liberty interest in Redd's right to seek habeas review."); AB19 ("A convicted prisoner typically has a liberty interest in post-conviction habeas proceedings."). That conclusion is certainly correct, *see* Opening Brief ("OB") 27-33, and it bears briefly reemphasizing why it is so essential to protect that liberty interest in a state such as California.

As the opening brief explained, California requires that some of the most critical challenges to a conviction and sentence—such as ineffective assistance of counsel claims—be raised *first* and *only* during state habeas proceedings. OB6-7. Defendants do not dispute that requirement. Nor do they dispute that state habeas review is therefore "in many ways the equivalent of a prisoner's direct appeal." OB58 (quoting *Martinez v. Ryan*, 566 U.S. 1, 11 (2012)). Indeed, that partly

explains why the California Supreme Court has long held that state habeas counsel is necessary to "protect the interests of defendants and promote the cause of justice." *In re Anderson*, 447 P.2d 117, 131 (Cal. 1968); *see* OB8-9.

**B. Defendants' delay violates the liberty interest in habeas review.**

Given the protected interest in state habeas review, defendants also concede that "the Due Process Clause requires fair procedures for its vindication." *Miller v. Oregon Bd. of Parole & Post-Prison Supervision*, 642 F.3d 711, 716 (9th Cir. 2011); *see* OB45.[2] And they do not dispute that such fair procedures require an opportunity "to be heard at a meaningful time," OB46 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), or that a 25-year delay in proceedings means that potentially meritorious claims are gravely prejudiced, OB50-53, 62. Defendants, however, assert that they provide for timely review,

[2] Defendants baselessly criticize Mr. Redd for conducting a single analysis of what due process requires for the multiple liberty interests the opening brief identifies. The opening brief's analysis does not "collapse[]" the interests or manifest "imprecision." AB18. Instead, it recognizes that the injury and prejudice the delays cause are fundamentally the same for the different protected interests. *See* OB45-46, 50-53.

because they give petitioners the initial option to proceed pro se, and because there is no recognized constitutional right to state habeas counsel that renders that scheme impermissible.

#### 1. The initial option to proceed pro se does not render appointment delays constitutional.

Defendants erroneously assert that "California has afforded Redd all the process he is due under the federal constitution" "by providing Redd with the option of either waiting to have habeas counsel appointed" "or proceeding pro se." AB13-14. Defendants thereby suggest that habeas petitioners receive a fair, transparent initial choice to either wait for decades for an attorney or proceed without one. *See* AB20 ("Redd and other indigent inmates sentenced to death have a choice: they must choose between lengthy delays in the appointment of counsel or proceeding pro se." (quotation marks omitted)). That suggestion is incorrect; defendants never provided Mr. Redd such a "choice." Rather, the state and defendants have guaranteed the assistance of reasonably timely, effective capital habeas counsel.

That guarantee is made by statute, Supreme Court policy, and Supreme Court opinions. California Government Code Section 68662 is plain: Counsel must be appointed "*upon* a finding that the person is

indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer."[3] The statute does not permit a court to make the requisite findings but then decide not to appoint counsel for decades. Further, as the opening brief explained, and as defendants do not dispute, the California Supreme Court itself has established that appointments "shall be made simultaneously with appointment of appellate counsel or at the earliest practicable time thereafter." Cal. Sup. Ct. Policies Regarding Cases Arising from Judgments of Death, at 4[4]; OB10-11. And, leaving no doubt, the California Supreme Court has emphasized in published opinions that habeas counsel appointments "should occur shortly after an indigent defendant's judgment of death." *In re Morgan*, 237 P.3d 993, 996 (Cal. 2010). Such timely appointments, in the court's words,

---

[3] California enacted the statutory guarantee of timely counsel to respond to this Court's 1997 decision in *Ashmus v. Calderon*, which held that the state's appointment delays rendered it ineligible for expedited federal habeas review under 28 U.S.C. Chapter 154. *See* 123 F.3d 1199, 1208 (9th Cir. 1997), *rev'd for lack of case or controversy by Calderon v. Ashmus*, 523 U.S. 740 (1998); *see also* Bill Analysis, Senate Bill 513, enacted as 1997 Cal. Stats. Ch. 869 (explaining the intent of the bill to reduce delay), https://tinyurl.com/yckns2mb.

[4] Available at http://tinyurl.com/2p8892rc.

"enable habeas corpus counsel to investigate potential claims for relief and to prepare a habeas corpus petition at roughly the same time that appellate counsel is preparing an opening brief on appeal." *Id.* at 996.

That timing is critical. After all, habeas review in California often functions like a direct appeal, because a petitioner must raise many claims challenging a conviction and sentence for the first time there. *Supra* 5; OB6-7. Timely appointment of counsel is necessary to adequately develop those claims while witnesses are available and evidence is fresh. Indeed, defendants and their predecessors have repeatedly emphasized in opinions that habeas counsel is indispensable to the development and presentation of those claims. *See* OB9-10, 38. Repeatedly, they have detailed the "distinct advantages [counsel possess] over their inmate clients in investigating the factual and legal grounds for potentially meritorious habeas corpus claims." *In re Barnett*, 73 P.3d 1106, 1114 (Cal. 2003); *In re Morgan*, 237 P.3d at 998; OB9, 48-49; *see also McFarland v. Scott*, 512 U.S. 849, 855-56 (1994) ("The complexity of our jurisprudence in this area ... makes it unlikely that capital defendants will be able to file successful petitions … without the assistance of persons learned in the law."); *Martinez*, 566

U.S. at 12. Accordingly, the California Supreme Court has held that when a habeas petition "states a prima facia case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns." *In re Clark*, 855 P.2d 729, 748 (Cal. 1993).

California's guarantee of habeas counsel for indigent petitioners is therefore unambiguous: It promises reasonably timely, effective counsel. Mr. Redd accepted the offer of counsel on those terms. Defendants never told Mr. Redd that his choice would entail waiting for years, much less decades. Defendants simply recognized his acceptance of their offer, then left him in limbo—effectively shutting the door to habeas review through egregious appointment delays. *See* OB2.

Mr. Redd's legal limbo becomes even more constitutionally intolerable given the undisputed fact that state law "specif[ies] no right to withdraw an election of professional legal representation once made." *Barnett*, 73 P.3d at 1113.[5] Indeed, as Mr. Redd's case demonstrates,

[5] Even at the outset, a habeas petitioner may only decline counsel if "he or she fully understands the legal consequences of such a decision." *Barnett*, 73 P.3d at 1113. A prisoner who does not understand those consequences cannot proceed pro se. Therefore, there is no unqualified right to proceed pro se even at the outset of state habeas review.

defendants reject the pro se filings of habeas petitioners after they elect counsel. OB17.

In short, the option to proceed pro se has no bearing on whether defendants' delays in appointing counsel violate due process. They do.

**2. Finding that delays violate due process does not require recognizing a constitutional right to state habeas counsel.**

Contrary to defendants' suggestions, AB19-21, holding that decades-long appointment delays violate due process does not require recognizing a standalone constitutional right to state habeas counsel.[6] Rather, the due process violation here rests on the unremarkable and commonsense proposition that when a state chooses to structure its habeas process to incorporate a guarantee of counsel, it must comport with basic due process safeguards in implementing that process. The Constitution may not have required California to guarantee state habeas counsel. But when the state did so, due process protections attached. "[I]t is now fundamental that, once established, these

[6] As defendants observe, the Supreme Court in *Martinez* left open whether such a right exists in a state like California that requires petitioners to raise certain claims for the first time in state habeas, such that habeas functions like a direct appeal where a constitutional right to counsel exists. AB19; *see Martinez*, 566 U.S. at 8-9.

avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi v. Yeager*, 384 U.S. 305, 310 (1966).

That should not be controversial; the same rule exists in many contexts. For instance, there is no federal constitutional right to good-time credits for prisoners, but the Due Process Clause protects the process to determine them once a state adopts and defines them. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). It is the same for parole eligibility. *E.g.*, *Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987). Or, outside the criminal context, revocation of welfare benefits and similar civil proceedings. *E.g.*, *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In each of those contexts, and many others, there is no independent constitutional right to the underlying proceeding. But once a state establishes it, due process safeguards attach. The same is true here.

#### 3. Defendants concede that delay in habeas review causes prejudice.

Critically, defendants do not disagree that a 25-year delay in state habeas review of a conviction and sentence, if attributable to their actions, violates due process. The opening brief explained why that is

the case—whether one applies the balancing test of *Mathews v. Eldridge* or the *Barker v. Wingo* test to determine when state-created delay violates due process. OB45-62. The opening brief detailed case after case that has found "excessive delay[s]" in the review of convictions and sentences to violate the Constitution. OB56. "Whether the delay is in the state direct appeal process or in the routes of post-conviction relief is of no significance." *Johnson v. Roberts*, 95 F.3d 48 (5th Cir. 1996) (per curiam) (unpublished); OB56-58 (listing cases).

The same principles apply here. When a habeas petitioner accepts defendants' offer of counsel, it triggers decades-long delays in adjudicating habeas claims. That delay is far longer than delays that courts have found unconstitutionally excessive. *See* OB59. It invariably results in a substantial loss of evidence and severely undermines the development of often meritorious claims. *Phillips v. Vasquez*, 56 F.3d 1030, 1036 (9th Cir. 1995); *see also Massie v. Sumner*, 624 F.2d 72, 74 (9th Cir. 1980) (noting California's "strong interest in the accuracy and fairness of all its criminal proceedings"). That means that an individual may unjustly "languish in prison or jail," OB58 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 304 (5th Cir. 1980)), or even

be wrongly executed, *see Schlup v. Delo*, 513 U.S. 298, 324-25 (1995) ("The quintessential miscarriage of justice is the execution of a person who is entirely innocent."); *Herrera v. Collins*, 506 U.S. 390, 403 (1993) ("[T]he passage of time only diminishes the reliability of criminal adjudications."). Defendants dispute none of that.

## II. Defendants' Delay Independently Violates Mr. Redd's Protected Liberty And Property Interests In California's Statutory Guarantee Of Habeas Counsel.

Although the Court can resolve this case based on defendants' violation of Mr. Redd's liberty interest in habeas review itself, defendants' delay independently violates the liberty and property interests that California has created through its statutory guarantee of timely appointment of habeas counsel. Defendants do not dispute that if such interests exist, the appointment delays here violate what due process requires to protect them. Instead, they argue that California's statutory guarantee of counsel does not create liberty or property interests. Defendants are wrong in both respects.

### A. California law creates a liberty interest in the appointment of counsel.

The opening brief explained why California's guarantee of counsel creates a liberty interest that the Due Process Clause protects. OB33-

41. Defendants, however, contend that the guarantee of counsel is a matter of mere "procedure," AB14—a right that does not "protect a substantive end," AB29—and that "'[p]rocess is not an end in itself,'" AB22. Defendants' argument misconstrues the substantive nature of the right to habeas counsel and how it protects fundamental constitutional guarantees.

As a threshold matter, defendants do not deny that a protected liberty interest can arise "from an expectation or interest created by [a] state law[] or polic[y]" that both specifies "substantive predicates governing official decisionmaking" and mandates "the outcome that must be reached if the substantive predicates have been met." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) (quotation marks omitted). And defendants identify no flaw in the district court's conclusion that those prerequisites are met here. *See* ER14-15. California Government Code § 68662 "mandates State action through the use of the word 'shall,' and it substantively limits official discretion by requiring the [court] to appoint habeas counsel to any prisoner sentenced to death if he has met two predicates: (1) he is indigent and

(2) he accepts the offer of counsel or is not competent to accept or reject the offer of counsel." ER15.

Instead, like the district court, defendants argue that the state's guarantee of counsel does not establish a protected liberty interest because the right to counsel "is merely a right to additional procedure in connection with the habeas process," AB14, a right that does not "protect a substantive end," AB29; *see* ER15-16. Defendants are incorrect.

First, the statute here guarantees a quintessentially substantive right. As the opening brief explained (at OB36-37)—and as detailed above (at 9-10)—the right to counsel is a fundamental guarantee that profoundly reshapes *what* a litigant has to say—not just the procedures for *how* to say it. Accordingly, this Court has already characterized the right to counsel as a substantive guarantee in the very cases defendants rely on. In *Bonin v. Calderon*, for instance, the court contrasted the "procedural right" at issue—a law allowing a defendant to have two attorneys present at closing argument—with "more fundamental *substantive* rights such as the right[] to *effective assistance of counsel*."

59 F.3d 815, 842 (9th Cir. 1995) (emphasis added); *see also James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010).

Defendants' response proves the point. Defendants acknowledge that appointment of counsel is a "fundamental," "substantive right" in "criminal trial[s]" or "direct criminal appeal[s]." AB26. They nevertheless contend that the rule should be different in state habeas, where the United States Supreme Court has not recognized an independent constitutional right to counsel. AB26-27. Yet defendants offer no explanation for why the guarantee of counsel would be a "substantive right" when it arises from the Constitution, AB26, but only a "procedural right" when created by state law. Either way, the type of right is the same: a "substantive" guarantee, *Bonin*, 59 F.3d at 842, that transforms a litigant's case—not mere "procedur[e]," *id.*, or a "needless formality," *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (quotation marks omitted). And the fact that California habeas review "is in many ways the equivalent of a prisoner's direct appeal," *Martinez*, 566 U.S. at

11, *supra* 5, only further confirms that counsel plays the same substantive role in California habeas proceedings as on direct review.[7]

That is even more true because California's guarantee of capital habeas counsel "protect[s]" crucial "substantive end[s]," *Bonin*, 59 F.3d at 842, by ensuring the proper investigation and presentation of critical claims that a petitioner can only raise in state habeas, *see supra* 9-10; OB37-40. Defendants do not dispute that this Court's test of whether a protected interest exists looks to whether state law "protect[s] some substantive end." AB29 (quoting *Bonin*, 59 F.3d at 842). But they argue that the guarantee of counsel here does not do so because it does not "mandate any particular outcome" and does not, by itself, "dictate that Redd's conviction be vacated, or that his capital sentence be overturned." AB30.

---

[7] For similar reasons, defendants are incorrect that Mr. Redd's argument is somehow "circular," AB26. Although the Supreme Court has not recognized a constitutional right to state habeas counsel, *see supra* 11 n.6, it "has repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause"—even when the Constitution itself did not require the state to act in the first place, *Carlo v. City of Chino*, 105 F.3d 493, 497 (9th Cir. 1997) (quotation marks omitted); *see supra* 11-12. The same analysis applies to California's guarantee of timely habeas counsel.

That misreads the test; what matters is whether the statutory guarantee "protects" a substantive interest, not whether it mandates a particular outcome. Requiring a "conviction be vacated" or a "capital sentence be overturned," AB30, cannot be the proper test because the statutes at issue in *Fetterly v. Paskett*, *Walker v. Deeds*, and *Campbell v. Blodgett* would all have failed it. As defendants recognize, those cases involved state laws that merely "dictated the *manner* in which the criminal case was to be conducted"—not the ultimate outcome of conviction or sentence. AB28. *See Fetterly*, 997 F.2d 1295, 1299-300 (9th Cir. 1993) (statutory procedure for trial court to balance aggravating and mitigating circumstances); *Walker*, 50 F.3d 670 (9th Cir. 1995) (procedure for sentencing judge to make specific findings); *Campbell*, 997 F.2d 512, 522 (9th Cir. 1992) (procedure for appellate court to make findings in capital cases). Yet, in each case, this Court held that the statute created a liberty interest in the state-law process itself—apart from any broader interest in the criminal process—because the law at issue protected a crucial "substantive end." *Bonin*, 59 F.3d at 842. The same is true of the guarantee of counsel here.

Finally, defendants' repeated reliance on *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009), and *Osborne*'s citation to *Medina v. California*, 505 U.S. 437 (1992), is misplaced. *See* AB23-25, 30. In both *Osborne* and *Medina*, a protected liberty interest existed, and the question was whether the procedures at issue adequately protected that interest. *See Osborne*, 557 U.S. at 68; *Medina*, 505 U.S. at 442-43. The dispute in *Osborne* turned on whether the state's procedures for DNA testing failed to protect the prisoner's undisputed liberty interest in habeas review. *See* 557 U.S. at 68-72. *Medina*, meanwhile, asked whether a state's allocation of a burden of proof adequately protected the undisputed liberty interest in the criminal process itself. *See* 505 U.S. at 442-43.

Here, however, defendants argue that California's guarantee of habeas counsel does not establish a protected liberty interest at the *first* step of the due process analysis. *See* AB22-23. *Osborne* and *Medina* do not inform that question. And as the opening brief explained (and as defendants do not appear to dispute), if a liberty interest exists here, the proper tests to determine whether that interest is violated are provided by *Mathews v. Eldridge* and *Barker v. Wingo*. OB45-63.

To the extent that defendants are impliedly suggesting that *Medina* should govern what due process requires if a liberty interest exists here, rather than *Mathews* or *Barker*, defendants' implied assertion is baseless. *Medina* applies only to due process challenges to "state procedural rules that are part of the criminal process" itself, such as the "allocation of burdens of proof" or "the type of evidence qualifying as admissible." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017) (quotation marks and alterations omitted); *see, e.g.*, *Kaley v. United States*, 571 U.S. 320, 350 n.4 (2014) (Roberts, C.J., dissenting) (applying *Mathews*, not *Medina*, to "the pretrial deprivation of property a defendant needs to exercise his right to counsel of choice").[8] And even if *Medina*'s standard did apply here, Mr. Redd's 25-year delay in receiving counsel satisfies it. *Medina* asks whether the state's challenged procedure "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in

[8] Although the *Kaley* majority did not decide which standard applied, *see* 571 U.S. at 334, Chief Justice Roberts' dissent differentiating *Mathews* and *Medina* was later cited with approval by the Court in *Nelson*, 137 S. Ct. at 1255.

operation.'" *Osborne*, 557 U.S. at 69 (quoting *Medina*, 505 U.S. at 446, 448). As the opening brief detailed, courts have long held that even much shorter delays in review proceedings result in "monumental injustice," given the "substantial likelihood that witnesses will die or disappear, memories will fade, and evidence will become unavailable." *Phillips*, 56 F.3d at 1036, 1038 (quotation marks omitted); *see* OB50-53, 59, 62. If a 25-year deprivation of counsel for a prisoner facing execution does not offend the "traditions and conscience of our people," *Medina*, 505 U.S. at 445, it is difficult to imagine what would.

### B. California's guarantee of counsel also creates a protected property interest.

California's statutory promise of habeas counsel also creates a protected property interest. Notably, defendants do not dispute that California law provides Mr. Redd a "*legitimate claim of entitlement to*" the benefit of appointed counsel, *Greene v. Babbitt*, 64 F.3d 1266, 1271 (9th Cir. 1995), thereby establishing a property interest consonant with other entitlements the Due Process Clause protects. *See* OB42-44; *e.g.*,

*Geneva Towers Tenants Org. v. Federated Mortg. Invs.*, 504 F.2d 483, 488-91 (9th Cir. 1974) (property interest in housing subsidies).[9]

Instead, defendants' sole argument is that "California law does not create a property interest in *how quickly* counsel is appointed." AB31 (title case omitted; emphasis added). According to defendants, Mr. Redd has "received everything to which he is entitled" "under California law," AB31—namely, the promise that he will be appointed an attorney, someday, if one ever becomes available while he is alive.[10] *See also* AB33 ("The simple reality is that Redd has been provided precisely what state law provides; he simply wants state law to give him greater rights than it does."). In other words, defendants allege that Mr. Redd has suffered no deprivation of his constitutionally

[9] The mandatory nature of California's appointment statute—which *requires* defendants to appoint counsel to qualifying indigent prisoners—distinguishes this case from those defendants cite as finding no protected property interest. *See* AB32; *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760-61 (2005) (no property interest in forcing police to make an arrest given "well established tradition of police discretion" (quotation marks omitted)); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972) (no property interest in professor's continued employment where nothing in contract or state law required contract renewal).

[10] Since 1997, at least 44 death-sentenced persons have died in prison of means other than execution before habeas counsel was even appointed.

protected property interest because California law actually authorizes a 25-year delay in appointing counsel. AB31.

That makes little sense. As explained above (at 7-9), California law requires the reasonably timely appointment of effective counsel. Defendants cite no California law authorizing a multi-year delay—much less a quarter-century delay. *See* AB32-33. No such law exists. And as the district court concluded, and as defendants do not deny, defendants' actions have directly contributed to the appointment delays here. *See* ER10 (finding the delays "traceable to Defendants' alleged failure to improve their system for attracting and appointing counsel"). Defendants cannot fail to implement the timely appointments California law requires, then cite their own delays as an alternative interpretation of what that law "requires." AB1.

Moreover, it is the federal Due Process Clause, and not state law, that determines what procedures are constitutionally required to protect a property interest, and that forbids defendants' delays here. Although state law defines the substance of the protected property interest, the "minimum procedural requirements" for its deprivation "are a matter of federal law." *Loudermill*, 470 U.S. at 541 (quotation

marks and alterations omitted). After all, "[w]ere the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology," providing no protection beyond what state law already afforded. *Id.* For example, a state that creates a protected property interest in public employment may not terminate that interest without complying with procedural due process, including by providing a pretermination hearing—even if state law itself authorizes termination without a hearing. *See id.* at 541-46. Likewise, here, California law defines the substance of the property interest—the appointment of capital habeas counsel—but federal due process protections forbid the extreme *delay* in that appointment. *See, e.g.*, *id.* at 547 (where state law provided a post-termination hearing, "[a]t some point, a delay in [that] hearing would become a constitutional violation"); *Coe v. Thurman*, 922 F.2d 528, 530-31 (9th Cir. 1990) ("excessive delay in obtaining an appeal may constitute a due process violation," regardless of state law). That is equally true if those delays are caused, in part, by "insufficient funding," AB33—just as extreme delays at trial or on direct appeal plainly offend the Constitution, even if underfunding is a cause.

Finally, and at a minimum, Mr. Redd received no notice that California's guarantee of timely counsel was illusory. For the reasons discussed above, the Due Process Clause does not permit the state to seemingly guarantee a valuable property interest, such as the appointment of potentially lifesaving counsel; induce a prisoner to accept that interest at the expense of other options, such as proceeding pro se; then fail to follow through on its promise for a quarter century—thereby destroying the property interest's value, while enhancing the prospect of the prisoner's wrongful execution.[11]

[11] To the extent defendants suggest that Mr. Redd forfeited this argument below, AB31, they are mistaken. Mr. Redd's complaint alleged that California law created both "a liberty *and property interest* in the timely appointment of counsel." AB12 (quoting ER38) (emphasis added). Moreover, Mr. Redd preserved the claim that the Due Process Clause protects his interest in the appointment of counsel. He may therefore advance "any argument in support of that claim" on appeal. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *see also, e.g.*, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (addressing "pure question of law" not considered in district court). At a minimum, because this was the first dismissal on the merits of Mr. Redd's due process claim, the dismissal *with prejudice* must be vacated to allow him to further allege a property-interest argument. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." (quotation marks omitted)).

## III. Abstention Is Inapplicable And Unwarranted.

Finally, defendants assert that federal courts should abstain from considering the constitutionality of the appointment delays—in deference to the state—even though defendants and state courts have failed to remedy the violations for decades. Defendants' argument has no legal basis. The type of abstention defendants invoke—known as *O'Shea* abstention—is rarely applied, highly circumscribed, and inapposite here.[12] And even if a legal basis for abstention existed, the district court still properly acted within its discretion in deciding abstention was inappropriate.[13]

---

[12] Defendants do not identify the abstention doctrine they invoke by name. But they are invoking the *O'Shea* doctrine, as confirmed by their articulation of the legal standard, the cases they cite, and their briefing in district court. *See* ER11-13 (district court order).

[13] Defendants accurately state that the standard for review for *O'Shea* abstention remains "unsettled" in this Court. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 782 (9th Cir. 2014). As in *Courthouse News*, the Court need not decide whether de novo or abuse of discretion review applies, because "the legal requirements for abstention are [not] satisfied" in the first place. *Id.* at 783. If the Court, however, chooses to reach the question, it should adopt an abuse of discretion standard. This Court applies abuse of discretion review to most other abstention doctrines, and other courts apply it to *O'Shea* abstention specifically. *See C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (describing how this Court has "applied an abuse of discretion test in

### A. The district court properly concluded no ground for abstention exists.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 517 U.S. at 716. That duty is "virtually unflagging." *Colo. River*, 424 U.S. at 817. Therefore, federal courts may abstain from exercising their jurisdiction only in exceptional and "carefully defined" circumstances. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). Abstention must "be exercised within the narrow and specific

---

reviewing district court abstention decisions" and emphasizing that a district court's discretion is at its greatest where, as here, it chooses not to abstain); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 324 (4th Cir. 2021) ("We review a court's refusal to abstain [under *O'Shea*] under a deferential abuse of discretion standard."); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996) (describing abstention as falling within a court's discretionary powers).

Defendants note that this Court reviews *Younger* abstention decisions de novo. AB16. But that is because *Younger* is limited to criminal prosecutions where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976). In that narrow circumstance, a district court has no discretion to exercise federal jurisdiction. *See Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294 (7th Cir. 1994) ("[W]hen a case meets the *Younger* criteria, the district court must abstain."); *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001). Defendants, however, cite no court that applies de novo review to *O'Shea* abstention.

limits prescribed by the particular abstention doctrine involved." *C-Y Dev. Co.*, 703 F.2d at 377.

Here, the district court properly concluded that the legal requirements for abstention are not met. As defendants acknowledge, *O'Shea* abstention is appropriate only when the relief sought would require federal courts to conduct "an ongoing federal audit of state … proceedings," *E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1123 (9th Cir. 2012) (quotation marks omitted), thereby "requir[ing] the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment," *Courthouse News*, 750 F.3d at 790.

That should end the analysis in this case. Mr. Redd seeks a declaration that defendants' decades-long appointment delays are unconstitutional. He seeks no relief that would require an ongoing "audit" of the "substance of individual cases on an ongoing basis." As the district court properly held, the "bright-line declaration" Mr. Redd requests "does not require intensive continued intervention by federal courts into state judicial affairs." ER12.[14]

---

[14] Given that declaratory relief requires no ongoing intervention, the Fourth Circuit has held that *O'Shea* abstention does not restrict a

Further, the district court properly observed that "[t]he question of the constitutionality of California's current system for appointing state habeas counsel to indigent individuals sentenced to death is substantial and important to Plaintiff, the other death row inmates he seeks to represent, Defendants, and the State of California." ER12. Accordingly, "a declaration of unconstitutionality would" "'serve a useful purpose in clarifying and settling the legal relations between the parties' on a matter of grave importance." ER13. And, as the district court also correctly explained—and defendants do not dispute—a declaration would likely redress the delays, as "Defendants have the ability" to act to "attract qualified counsel." ER9.

### B. This Court's precedent highlights why abstention is inappropriate.

This Court's precedent confirms that the district court correctly exercised jurisdiction. Even if a federal court ruling would impose "systemic changes to an institution," abstention is impermissible unless the relief sought meets *O'Shea*'s specific requirements. *Courthouse News Service*, 750 F.3d at 792 (quotation marks omitted). In

"court's ability to grant [a] request for declaratory judgment." *Courthouse News Serv.*, 2 F.4th at 324-25.

*Courthouse News*, plaintiffs requested injunctive relief that would have required a superior court to change its public information policies. *Id.* In finding abstention unwarranted, this Court reasoned that holding the superior court's policies violated the First Amendment would be a "bright-line finding" of unconstitutionality, allowing the defendant to fashion systemic changes that protected First Amendment rights; it would not impose an "ongoing federal audit" of the superior court. *Id.* at 791-92. The Court further clarified that the mere fact "that *some* additional litigation may later arise"—the same argument defendants raise here (*see* AB38-39)—does not warrant abstention. *Id.* at 792. After all, "[a]ny plaintiff who obtains equitable relief under 42 U.S.C. § 1983 enforcing his constitutional rights against a state official may need to return to court to ensure compliance with the judgment." *Id.* Permitting abstention in that circumstance "would justify abstention as a matter of course in almost any civil rights action under § 1983." *Id.*

This Court similarly held that *O'Shea* abstention was unwarranted in *L.A. County Bar Ass'n v. Eu*, where the plaintiff sought a declaration that a California statute provided too few judgeships and thereby "cause[d] inordinate delays in civil litigation" that violated

federal due process rights. 979 F.2d 697, 699, 707 (9th Cir. 1992). Abstention was inappropriate even though the declaration would undoubtedly force the legislature to "authorize[] more judicial positions," which the governor would then "have a legal duty to fill." *Id.* at 701. Although such relief "would inevitably require restructuring" of the superior court, the Court held federal review proper where the relief "would resolve a substantial and important question currently dividing the parties." *Id.* at 703-04.

The two cases defendants rely on—*Miles v. Wesley* and *E.T.*—only confirm why abstention has no basis here. In *Miles*, plaintiffs complained that a state court restructuring plan, responding to a fiscal crisis, would impermissibly reduce the number of courthouses handling unlawful detainer cases, thereby "disproportionately impact[ing] poor, disabled, and minority residents." 801 F.3d 1060, 1061 (9th Cir. 2015). Plaintiffs sought "an injunction preventing [the court] from eliminating even a single courthouse that … heard unlawful detainer actions" despite the "fiscal crisis." *Id.* at 1064. They also requested "an order requiring [the court] to hold public meetings before planning any future unlawful detainer courtroom closures, and for the district court to

retain jurisdiction for an unspecified period of time to ensure compliance." *Id.* That circumstance warranted abstention because the relief would involve "federal supervision" that "would place a district court in the role of receiver for a state judicial branch." *Id.* (quotation marks omitted). Such an "ongoing intrusion into the state's administration of justice … would be unprecedented." *Id.* (quotation marks omitted).

Meanwhile, in *E.T.*, the plaintiffs alleged that excessive caseloads prevented a county's dependency courts from "fairly and adequately hear[ing] their cases," and prevented "court-appointed attorneys [from] provid[ing] … effective assistance." 682 F.3d at 1122. The relief sought would have required federal courts to determine "whether some types of cases require more investigation or preparation, which types of those cases deserve more resources, and how much time or attention is constitutionally and/or statutorily permissible." *Id.* at 1124. Given that intrusive and amorphous federal interference, the district court found abstention required, and this Court affirmed, reasoning that the relief "would amount to an ongoing federal audit of … Dependency Court proceedings." *Id.*; *see Courthouse News Serv.*, 750 F.3d at 791

(explaining that *E.T.* found abstention appropriate because the relief would have entailed "the ongoing monitoring of the substance of state proceedings" and forced the federal court "to engage in … intensive, context-specific legal inquiry … to determine whether counsel's performance was constitutionally adequate" given individual caseloads).

Here, as the district court explained, the relief requested is far removed from cases like *Miles* and *E.T.*—in kind and intensity. The relief requires no "federal audit" or any "ongoing monitoring" of state proceedings. *Supra* 29-30. And federal courts have repeatedly analyzed claims alleging analogous delays under the Due Process Clause. *E.g.*, OB56-59 (collecting cases holding that excessive delay in state appeals and habeas violates due process). Defendants assert that "Redd has not asked for a bright-line rule to govern his claim"; "[f]or example, Redd does not ask this Court to declare that California violates his right to due process when it does not appoint a habeas attorney within five years, or any other specified duration." AB37. But that is exactly what he is asking for—a declaration that the 25-year delay in appointing him counsel violates due process.

### C. Defendants' speculation about a possible class does not support abstention.

Finally, defendants speculate that the nature of the class that Mr. Redd seeks to represent may transform or broaden the relief sought. Because "putative class members have been awaiting appointment of counsel for widely varying amounts of time," defendants argue, "assessing whether each prisoner has sustained an alleged due process violation would require an individualized timeliness assessment for what Redd alleges are hundreds of putative class members." AB37.

But Mr. Redd has not yet sought class certification. There is no certified class definition. When and if Mr. Redd seeks certification, defendants may certainly raise arguments as to why class certification fails Rule 23's requirement of commonality, or other certification requirements, based on any individualized issues that putative class members present. Defendants may even reraise abstention at that time, although it will remain inappropriate given the declaratory relief the class would seek. It is premature, however, to argue that abstention is required now due to speculation about what a class, if any, may look like.

## CONCLUSION

The judgment of the district court dismissing Mr. Redd's complaint should be reversed.

Respectfully submitted,

*/s/Paul David Meyer*

Paul David Meyer
Karim J. Kentfield
Lillian J. Mao
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5806

Mark S. Davies
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Ronald A. McIntire
Taylor R. Russell
Perkins Coie LLP
1888 Century Park East 1700
Los Angeles, CA 90067
(310) 788-3277

*Counsel for Plaintiff-Appellant*

February 9, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 21-55464

I am the attorney or self-represented party.

**This brief contains 6989 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Paul David Meyer* **Date** February 9, 2022
*(use "*s/[typed name]*" to sign electronically-filed documents)*